**J.V. PETERS & COMPANY, INC.,
et al., Plaintiffs,**

v.

**William RUCKELSHAUS, Administrator,
U.S. Environmental Protection
Agency, et al., Respondents.**

No. C 83–4436.

United States District Court,
N.D. Ohio, E.D.

Feb. 17, 1984.

Brent L. English, Cleveland, Ohio, for plaintiffs J.V. Peters & Co., Inc., J.V. Peters & Co., David B. Shillman and Dorothy Brueggemeyer.

Kathleen Ann Sutula, Asst. U.S. Atty., Cleveland, Ohio, David T. Buente, Michael W. Steinberg, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., Jonathon McPhee, Region V, Chicago, Ill., for defendants William Ruckleshaus, Valdas V. Adamkus and Joseph Fredle.

Wentworth J. Marshall, Jr., Cronquist, Smith, Marshall & Kagels, Cleveland, Ohio, for defendant Samsel Supply Co.

Terrence M. Fay, Asst. Atty. Gen., Columbus, Ohio, for intervening party defendant State of Ohio.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

This is an action arising out of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601 *et seq.* CERCLA authorizes the United States Environmental Protection Agency (EPA) to undertake remedial action whenever there is a release or threatened release of any hazardous substance, pollutant, or contaminant which presents an imminent and substantial danger to the public health or welfare, unless the EPA determines that such remedial action will be properly performed by the owner or operator of the facility in which the release emanates, or by any other responsible party. 42 U.S.C. § 9604(a). EPA response actions pursuant to CERCLA must be carried out in accordance with the regulations set forth in the national contingency plan as promulgated by the Administrator of the U.S. EPA pursuant to 42

U.S.C. § 9605 and found at 42 C.F.R. § 300. Such response actions are financed by the withdrawal of money from the Hazardous Substance Response Fund (the Fund) established under 42 U.S.C. § 9631. However, this money may be subsequently recovered from the parties responsible for the hazardous release in an action brought by the EPA in federal court under 42 U.S.C. § 9607.

Plaintiffs in this action are the current and former owners and operators of an industrial waste storage facility. They are seeking to prevent the EPA from undertaking a CERCLA response action at their waste facility. Named as defendants are various EPA officials and a private contractor likely to be employed by the EPA to remove the hazardous substances from the site. The State of Ohio has been granted leave to intervene as a party-defendant.

Plaintiffs allege that the defendants have not acted in accordance with the provisions of CERCLA and the national contingency plan that require the EPA to make an assessment of the magnitude of the hazard present at the site and the ability and willingness of the responsible parties to provide an appropriate response before engaging in a response action under 42 U.S.C. § 9604. Plaintiffs also seek a declaration that the provisions of CERCLA, which provide for the expenditure of public monies from the Fund without a hearing and the potential assessment of liability for such monies to the owners and operators of the waste facility, violate their due process rights.

The federal defendants have filed a motion to dismiss the complaint asserting a lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

Defendants contend that the general federal question jurisdiction statute, 28 U.S.C. § 1331, is insufficient to provide a basis for subject matter jurisdiction in this action for several reasons. They argue that plaintiffs lack standing to bring this action, that there has been no "final" administrative action subject to judicial review, and that the issues involved in this action are not "ripe" for review.

■■■■ The doctrine of standing requires a litigant to be in the proper position to assert a claim. The issue of standing involves both constitutional and prudential considerations. Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" or "controversies."

Article III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," ... and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision, ...."

*Valley Ford College v. Americans United,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700, [citations and footnote omitted]. Although the EPA's response action in the present case will not in itself impose any liability upon plaintiffs, the great likelihood that the EPA will institute an action against plaintiffs to recover the Fund monies expended is a sufficient threat of injury to satisfy Article III. "It should not be necessary for the plaintiffs to await the consummation of the threatened injury to obtain preventative relief." *Anderson v. Hooper,* 498 F.Supp. 898, 902 (D.N.M.1980). The threat of injury to plaintiffs in this action can be traced directly to the EPA response action being challenged. Moreover, were plaintiffs to achieve a favorable decision in this action, the threat of liability for the costs of the response action would be eliminated. Consequently, plaintiffs have satisfied the constitutional aspects of the standing doctrine.

Apart from its constitutional elements, the doctrine of standing also requires that a plaintiff's injury be arguably within the zone of interests to be protected or regulated by the statute in question. *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). "[T]he zone test serves the purpose of al-

lowing courts to define those instances when it believes the exercise of its power at the instigation of a particular party is not congruent with the mandate of the legislative branch in a particular subject area." *Tax Analysts and Advocates v. Blumenthal,* 566 F.2d 130, 140 (D.C.Cir. 1977). In enacting CERCLA, the legislature intended to provide the EPA with the authority to respond quickly to environmental emergencies. Congress did not intend, however, to absolutely deny the owner of a waste facility the ability to challenge an EPA response action in federal court. The provisions of CERCLA and the national contingency plan set forth specific procedural guidelines that the EPA must follow in undertaking response actions. Consequently, a federal court's exercise of jurisdiction over a waste facility owner's claim that the EPA has failed to comply with these procedures would not contradict the purpose of the CERCLA legislation. Plaintiff's injury, therefore, falls within the zone of interests to be protected by CERCLA.

■ Defendants also contend that the EPA's decision to undertake a response action does not represent a "final" administrative action and is therefore not subject to judicial review. "[C]ases dealing with judicial review of administrative actions have interpreted the 'finality' element in a pragmatic way." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1516, 18 L.Ed.2d 681 (1967). In this action, there are no administrative procedures by which plaintiffs can challenge the appropriateness of the EPA response action. Moreover, the response action contemplated by the EPA would result in the expenditure of a large sum of money for which plaintiffs would be potentially liable. Immediate judicial review provides plaintiffs with the only opportunity to challenge the propriety of the response action prior to its commencement and the potential imposition of liability. Consequently, a pragmatic consideration of the issues in this case demonstrates that the EPA's decision to conduct a response action at plaintiffs' facility constitutes a "final" administrative action that is subject to judicial review.

■ Defendants also assert that the issues raised by plaintiffs are not yet ripe for judicial review. The ripeness doctrine functions

... to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies and also to protect the agencies from judicial interference until an administrative decision has been formalized and it effects felt in a concrete way by the challenging parties.

*Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The issue of ripeness involves an analysis of "the fitness of the issues for judicial decision and the hardship to the parties of withholding consideration." *Id.* The issues raised in this action are ripe for judicial review. Plaintiffs have no other opportunity to challenge the appropriateness of the EPA response action prior to its commencement. The withholding of judicial consideration at the present time would also impose a substantial burden on plaintiffs. Once the EPA carries out the contemplated response action, plaintiffs become potentially liable for the funds expended. The only way plaintiffs can avoid this potential liability is to challenge the response action before it is conducted. Thus, a consideration of the relevant factors indicates that the issues presented by plaintiffs in this action are ripe for review.

Inasmuch as plaintiffs maintain the requisite standing to bring this action, and the issues raised are ripe for judicial review, a sufficient basis for subject matter jurisdiction exists. It remains necessary, therefore, to determine whether plaintiffs have set forth a claim upon which relief can be granted.

■ Plaintiffs claim that the defendants have not acted in accordance with the provisions of CERCLA and the national contingency plan. The gravamen of their claim is that defendants have not properly assessed the magnitude of the hazard present

at the waste facility and the plaintiffs' willingness and ability to provide an appropriate response as required by 42 U.S.C. § 9604(a) and 40 C.F.R. § 300.4. The CERCLA legislation was enacted to provide the EPA with the authority to act quickly when the environment is being seriously threatened. The legislative history of the statute clearly shows that Congress did not intend to require the EPA to conclusively establish the existence of a substantial threat to the environment prior to undertaking a response action. "[E]mergency action will often be required prior to the receipt of evidence which conclusively establishes an emergency. Because delay will often exacerbate an already serious situation, the bill authorizes the Administrator to take action when an imminent and substantial endangerment *may* exist." H.R.Rep. No. 96–1016, Part I, 96th Cong., 2nd Sess. 28, *reprinted in* [1980] U.S.Code Cong. & Admin.News 6119, 6131 (emphasis in original). Thus, if owners and operators of waste facilities were permitted to maintain an action in federal court, whenever the EPA was preparing to undertake a response action, the purpose of the CERCLA legislation would be severely undermined.

■ There may exist, however, situations in which the owner or operator of a waste facility can properly set forth a claim to prevent the performance of a CERCLA response action. CERCLA and the national contingency plan require the EPA to make a preliminary assessment of the threat to the environment present at a waste facility prior to conducting a response action. Therefore, if the owner or operator of a waste facility averred that the EPA had absolutely no rational basis for undertaking a response action and that no preliminary assessment had been made, a federal court would entertain the claim. However, to preserve the integrity of the CERCLA legislation, such claims must be specifically alleged and supported by material facts, not merely conclusory statements.

■ In the present action, plaintiffs' complaint contains merely conclusory allegations that the EPA has not acted in accordance with the provisions of CERCLA and the national contingency plan. Moreover, plaintiffs have failed to set forth any material facts to support their allegations that no threat to the environment exists at the waste facility. Thus, plaintiffs in this action have failed to state a cognizable claim.

■ Plaintiffs also seek a declaration that the provisions of CERCLA violate their due process rights. The concept of due process operates to impose constraints on governmental actions that deprive individuals of liberty or property interests.

[T]he specific dictates of due process generally requires consideration of three distinct factors: first the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). The private interest at stake in this action is plaintiffs' potential liability for the costs incurred in carrying out the response action. Although CERCLA authorizes the immediate response to environmental emergencies, the EPA must bring a subsequent action in federal court pursuant to 42 U.S.C. § 9607 to recover the costs of the remedial action from the responsible persons. At the present time, therefore, plaintiffs liability is not an absolute certainty. Consequently, only if the EPA prevails in the subsequent action will plaintiffs' private interest be irreversibly affected.

The risk of an erroneous deprivation of plaintiffs interests under the provisions of CERCLA is not very great. When the EPA brings an action to recover the costs

of the response action, plaintiffs will have the opportunity to contest its propriety. The owners and operators of a waste facility shall be liable for the costs of any remedial action taken by the EPA that is "not inconsistent with the national contingency plan...." 42 U.S.C. § 9607(a)(4)(A). If plaintiffs can establish that the EPA did not act in accordance with § 9604(a) and the national contingency plan, they will not be held liable for the costs of the response action. Thus, there exists little risk of plaintiff's interests being erroneously deprived under the terms of CERCLA. Furthermore, since CERCLA was enacted to permit the EPA to swiftly respond to environmental emergencies, any additional or substitute procedural safeguards would thwart the purpose of the statute.

Finally, the governmental interest at issue in this action is substantial. The CERCLA legislation was established to protect public health and the environment. The legislative history previously cited demonstrates that Congress intended to allow the EPA to act without delay in preventing the introduction of hazardous substances into the environment. If the EPA were required to follow any further procedural safeguards prior to the commencement of a CERCLA response action, the purpose of the statute would clearly be frustrated. Thus, a weighing of the factors set forth in *Mathews* establishes that the provisions of CERCLA do not violate plaintiffs due process rights.

In view of the foregoing discussion, the federal defendants' motion to dismiss for failure to state a claim is granted.

This action is hereby terminated.

IT IS SO ORDERED.