**UNITED STATES of America, Plaintiff,**

v.

**UNITED NUCLEAR CORPORATION, Defendant.**

Civ. 84–1409 BB.

United States District Court,
D. New Mexico.

April 18, 1985.

Herbert A. Becker, Asst. U.S. Atty., Albuquerque, N.M., F. Henry Habicht, II, Asst. Atty. Gen., Lawrence R. Liebesman, George B. Henderson, Environmental Defense Section, U.S. Dept. of Justice, Land & Natural Resources Div., M. Elizabeth Cox, Office of Enforcement, Samuel I. Gutter, Office of Gen. Counsel, U.S. Environmental Protection Agency, Washington, D.C., James Turner Office of Regional Counsel, U.S. Environmental Protection Agency—Region VI, Dallas, Tex., for plaintiff.

Stephenson, Carpenter, Crout & Olmstead, Michael S. Yesley, Santa Fe, N.M., and Covington & Burling, Peter J. Nickles, Washington, D.C., for defendant.

### MEMORANDUM OPINION AND ORDER

BALDOCK, District Judge.

THIS MATTER comes on for consideration of plaintiff's Motion to Dismiss Counterclaim, filed October 12, 1984. The court, having considered the memoranda submitted by the parties, the relevant law, and otherwise being advised fully in the premises, finds that the motion is well taken and should be granted.

The defendant, United Nuclear Corporation, owns and operated a uranium mining and milling facility near Churchrock, New Mexico. The Environmental Protection Agency (EPA) has determined that there are hazardous substances being released from unlined tailings ponds into nearby aquifers. Because of this problem, the Churchrock facility has been included in the "National Priorities List." 48 Fed.Reg. 40658 (Sept. 8, 1983). The National Priorities List is a list of high-priority sites compiled by EPA pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9605(8). The inclusion of this site on the list is currently being contested in the United States Court of Appeals for the District of Columbia. *Eagle-Picher, et al. v. Ruckelshaus, et al.,* No. 83–2259 and consolidated cases. "Remedial" measures may be taken at those sites which are on the List, and such measures may be financed initially through the Hazardous Substance Response Trust Fund (Fund) created by § 221 of CERCLA, 42 U.S.C. § 9631.

In September, 1983, the expenditure of Fund monies was approved for the purpose

of conducting a remedial investigation and feasibility study. Such a study consists of an investigation of the severity and extent of problems at the site, a compilation of remedial alternatives, and the selection of an appropriate remedy. 40 C.F.R. §§ 300.-68(f)-(k) (1984). Part of the study requires a field investigation of the site, which EPA estimates will take 28 weeks to complete. The defendant has refused to consent to EPA's entry onto its property to conduct the field investigation. Suit was filed by the United States to permit EPA's entry onto the Churchrock site and to enjoin defendant from interfering with the field investigation. The defendant's counterclaim followed.

In its counterclaim, defendant alleges that it is currently conducting various environmental studies and submitted to EPA an environmental plan for the Churchrock site. It contends that its due process rights were violated when EPA rejected its plan without notice or hearing. It also asserts that EPA's activities would interfere with or duplicate its efforts. It, consequently, requests the court to declare that it is properly conducting remedial action, that EPA's proposed action will not satisfy either the cost effectiveness requirement or the requirement to rely upon the clean-up actions taken by private parties to the extent possible, and that it has no liability for any costs or expenses incurred by EPA as a result of any studies EPA intends to undertake at the site. It also requests the court to enjoin EPA from entering the Churchrock site or interfering with studies or other activities. It requests any damages it may suffer as a result of EPA's trespass on its property, and costs associated with this action.

Plaintiff argues that defendant's counterclaim should be dismissed because the court lacks jurisdiction. It advances two theories in support of its motion: (1) CERCLA precludes judicial review at this stage of the administrative proceeding, and (2) that EPA's response activity is not a final agency action subject to review under the Administrative Procedure Act. Because I conclude that EPA's response activity is not a final agency action subject to review under the Administrative Procedures Act, it is unnecessary to decide whether CERCLA precludes judicial review.

The scope of judicial review of administrative actions is set forth in the Administrative Procedure Act (APA) which allows such review of "final agency action." 5 U.S.C. § 704. It is quite clear that not every action or activity undertaken by an agency constitutes "final agency action" within the statutory context. The Supreme Court has indicated that the finality requirement is to be interpreted in "a pragmatic way." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1516, 18 L.Ed.2d 681 (1967). In *F.T.C. v. Standard Oil Co.*, 449 U.S. 232, 239–40, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980), the Court noted the indicia of finality on which it had relied in *Abbot Laboratories:* The administrative action challenged should be a definitive statement of an agency position; the action should have a direct and immediate effect on the day-to-day business of the complaining party; the action should have the status of law; immediate compliance with the terms should be expected; and the question should be a legal one fit for judicial resolution.

An application of these principles here, as well as common sense, compels the conclusion that there has been no final action by EPA that warrants judicial review at this point. The EPA is currently seeking to initiate its response action by conducting a remedial investigation and feasibility study. EPA's response activity at the Churchrock site does not require the defendant to undertake any action nor does it assign liability to anyone. The proposed activities obviously do not have the status of law, but are a necessary prerequisite to possible remedial action. The appropriateness, effectiveness and efficiency of EPA's response activity may be challenged later if EPA brings a cost recovery suit pursuant to 42 U.S.C. § 9607(c)(3) or an enforcement action under 42 U.S.C. § 9606(b).

The defendant can raise as a defense in any future cost recovery action every objection to EPA's response activity which it could legitimately raise in a judicial proceeding at this time. Assuming that EPA elects to sue the defendant, it may only recover costs of removal or remedial action incurred by EPA not inconsistent with the National Contingency Plan. 42 U.S.C. § 9607(a)(4)(A). The National Contingency Plan must include methods for analyzing relative costs and means of assuring that remedial measures are cost effective. 42 U.S.C. § 9605; 40 C.F.R. § 300.68(j). Thus, if EPA's response activities are not cost effective, they would not be consistent with the National Contingency Plan and would not be recoverable under 42 U.S.C. § 9607(a). Similarly, if defendant has been prejudiced by any procedural irregularities, there is no reason why such irregularities could not be raised in a cost recovery action to the extent that they cause damages to the defendant.

Accordingly, judicial review is not available at this time because final agency action has not yet occurred. It is only after an enforcement proceeding or a cost recovery suit that the rights and liabilities of the parties will be fixed. Because EPA is still in the investigatory stage and has not yet developed a final clean-up plan for the site, defendants' claim is premature and will be dismissed without prejudice.

NOW, THEREFORE,

IT IS ORDERED that the counterclaim of United Nuclear Corporation is dismissed without prejudice.