767 F.2d 263
 22 ERC 2073, 54 USLW 2065, 15 Envtl.
L. Rep. 20,646
 J.V. PETERS & CO., INC.; J.V. Peters & Co.; David B.
Shillman; Dorothy Brueggemeyer, Plaintiffs-Appellants,
v.
ADMINISTRATOR, ENVIRONMENTAL PROTECTION AGENCY; Valdas V.
Adamkus; Joseph Fredle; Samsel Supply Company;
State of Ohio, Defendants-Appellees.
 No. 84-3229.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 26, 1985.
Decided July 3, 1985.
 
 Brent L. English (argued), Cleveland, Ohio, for plaintiffs-appellants.
 Martin W. Matzen, Robert L. Klarquist, U.S. Dept. of Justice, Kathleen P. Dewey (argued), Washington, D.C., Kathleen Ann Sutula, Cleveland, Ohio, David T. Buente, Michael W. Steinberg, Washington, D.C., John McPhee, Chicago, Ill., for defendants-appellees.
 Before KEITH and MARTIN, Circuit Judges, and TAYLOR, District Judge.*
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 This case presents the question whether there is a private cause of action to challenge governmental action taken under section 104(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (the Superfund legislation), 42 U.S.C. Sec. 9604(a), prior to a governmental suit for liability under section 107(a) of the Act, 42 U.S.C. Sec. 9607(a). The district court held that there was such a cause of action, but that plaintiffs' conclusory allegations failed to state a cognizable claim. J.V. Peters & Co. v. Ruckelshaus, 584 F.Supp. 1005 (N.D.Ohio 1984). We affirm the judgment but not the reasoning of the district court.
 
 
 2
 J.V. Peters and Company, Inc., was an Ohio corporation engaged in the business of storing and recycling industrial waste products at a site in Middlefield Township, Geauga County, Ohio. The site contained, among other things, acetone, ketones, toluene, and benzene, all inflammable, carcinogenic, or both, and, as plaintiffs concede, all are hazardous substances as defined in section 101(14) of the Act, 42 U.S.C. Sec. 9601(14). The chemicals were stored in some 800 metal drums, many of them leaking, some inside an unsecured building and others outside. Cattle grazed within a few feet of the east side of the site, and corn was grown immediately to the west of the property line; children walked past the site on their way to a school less than 1 1/2 miles away.
 
 
 3
 After the Ohio Environmental Protection Agency found that state court proceedings were unsuccessful in getting the site cleaned up, it contacted the United States Environmental Protection Agency (EPA). The EPA was unable to negotiate an acceptable cleanup plan with J.V. Peters and determined to take action under section 104(a)(1) of the Act, 42 U.S.C. Sec. 9604(a)(1). J.V. Peters and related parties then brought this action to prevent the EPA from taking action, claiming that they would automatically be made liable for cleanup costs under section 107(a) of the Act, 42 U.S.C. Sec. 9607(a), without a hearing and without an adequate remedy at law. The district court dismissed the case from the bench on November 18, 1983, and the EPA immediately took removal and remedial action to clean up the site. The court issued a written opinion on February 17, 1984, and plaintiffs appealed.
 
 
 4
 If plaintiffs have a cognizable claim at this point, it must be under the Administrative Procedures Act, which states that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. Sec. 704. The agency determination to take response action under section 104(a) of the Act, 42 U.S.C. Sec. 9604(a), is not explicitly made reviewable by statute, nor do we believe that such a cause of action should be inferred from the Act. To the contrary, explicit causes of action are allowed in sections 106 and 107, 42 U.S.C. Secs. 9606, 9607, but none is provided for in section 104. Because the Act's primary purpose is "the prompt cleanup of hazardous waste sites," Walls v. Waste Resource Corp., 761 F.2d 311, 318 (6th Cir.1985), allowance of a cause of action prior to a response action would debilitate the central function of the Act. Lone Pine Steering Committee v. EPA, 600 F.Supp. 1487, 1495 (D.N.J.1985); accord Aminoil, Inc. v. EPA, 599 F.Supp. 69, 71 (C.D.Cal.1984). Additionally, Congress is now considering legislation to provide explicitly that judicial review of response actions is unavailable, S. 51, 99th Cong., 1st Sess. (1985), and the Senate Report indicates this as a clarification of existing law:
 
 Pre-enforcement review
 
 5
 Response actions or orders under section 104 and orders under section 106 may be subject to judicial review at the time the government seeks cost recovery or acts to enforce the order and collect penalties for noncompliance. This amendment clarifies and confirms that response actions and orders are not subject to judicial review prior to that time.
 
 
 6
 As several courts have noted, the scheme and purposes of CERCLA would be disrupted by affording judicial review of orders or response actions prior to commencement of a government enforcement or cost recovery action. See, e.g., Lone Pine Steering Committee v. EPA, 600 F.Supp. 1487 (D.N.J.1985). These cases correctly interpret CERCLA with regard to the unavailability of pre-enforcement review. This amendment is to expressly recognize that pre-enforcement review would be a significant obstacle to the implementation of response actions and the use of administrative orders. Pre-enforcement review would lead to considerable delay in providing cleanups, would increase response costs, and would discourage settlements and voluntary cleanups.
 
 
 7
 S.Rep. No. 11, 99th Cong., 1st Sess. 58 (1985).
 
 
 8
 Nor do we believe that a response action is final agency action for which there is no other adequate remedy in a court. In general, agency action is final for purposes of review if it is a definitive ruling or regulation, it has legal force or practical effect upon the plaintiff's daily business, or immediate judicial review would serve either efficiency or enforcement of the statute. Federal Trade Commission v. Standard Oil Co., 449 U.S. 232, 239-43, 101 S.Ct. 488, 493-95, 66 L.Ed.2d 416 (1980). Plaintiffs do not argue that immediate judicial review would serve either efficiency or enforcement of the Act, but they do argue that the strict liability provisions of section 107(a) of the Act make a response action a definitive ruling with legal force. Section 107(a) provides:
 
 
 9
 (a) Covered persons; scope
 
 
 10
 Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection
 
 
 11
 (b) of this section--
 
 
 12
 (1) the owner and operator of a vessel (otherwise subject to the jurisdiction of the United States) or a facility,
 
 
 13
 (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
 
 
 14
 (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility owned or operated by another party or entity and containing such hazardous substances, and
 
 
 15
 (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--
 
 
 16
 (A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;
 
 
 17
 (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and
 
 
 18
 (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.
 
 
 19
 42 U.S.C. Sec. 9607(a). Subsection (b) sets forth the defenses of acts of God, acts of war, and acts or omissions of third parties.
 
 
 20
 It is true that section 107 imposes a form of strict liability. Bulk Distribution Centers v. Monsanto Co., 589 F.Supp. 1437, 1443 n. 15 (S.D.Fla.1984); United States v. Northeastern Pharmaceutical & Chemical Co., 579 F.Supp. 823, 843-44 (W.D.Mo.1984); United States v. Chem-Dyne Corp., 572 F.Supp. 802, 805 (S.D.Ohio 1983); United States v. Price, 577 F.Supp. 1103, 1113-14 (D.N.J.1983); City of Philadelphia v. Stepan Chemical Co., 544 F.Supp. 1135, 1140 n. 4 (E.D.Pa.1982). The government's right to recover, however, will be limited by the requirement that costs be "not inconsistent with the national contingency plan." Cf. Bulk Distribution Centers, 589 F.Supp. at 1444 (holding that private claimants must meet "more rigorous evidentiary burdens" of 42 U.S.C. Sec. 9607(a)(4)(B) before recovery of costs). The national contingency plan is prescribed in section 105 of the Act, 42 U.S.C. Sec. 9605, and set out at 40 C.F.R. pt. 300. The plan meets the plaintiffs' major concerns by requiring that remedial action measures be cost-effective, Act Sec. 105(7), 42 U.S.C. Sec. 9605(7), and precluding response action if a responsible party will take proper removal and remedial action, Act Sec. 104(a)(1)(A), 42 U.S.C. Sec. 9604(a)(1)(A); 40 C.F.R. Sec. 300.61(b). As defendants concede,
 
 
 21
 when EPA files an action to recover cleanup costs, the defendant may contest whether EPA acted inconsistently with the NCP. J.V. Peters will be able to assert such a claim, as well as contest liability, if EPA sues the company under Section 107. The possibility of failing to recoup expenditures in a cost-recovery action operates as an effective constraint upon EPA's decision to itself undertake a cleanup under Section 104....
 
 
 22
 Brief for Appellees at 25; see also Industrial Park Development Co. v. EPA, 604 F.Supp. 1136, 1144 (E.D.Pa.1985) (holding that EPA will not be allowed to impose unjustified costs in recovery action). The section 107 action will thus form an adequate remedy in a court, so the EPA decision to take a response action cannot be challenged under 5 U.S.C. Sec. 704. United States v. United Nuclear Corp., 610 F.Supp. 527 (D.N.M. 1985); Lone Pine Steering Committee, 600 F.Supp. at 1499 n. 2.
 
 
 23
 Plaintiffs also argue that the requirements of due process compel a judicial determination of propriety prior to a response action. They can suffer no deprivation until the adjudication of the section 107 litigation, however, and they will have full opportunity to argue liability at that time.
 
 
 24
 In view of this resolution it is unnecessary to consider whether the doctrines of ripeness and standing prevent plaintiffs' cause of action.
 
 
 25
 The judgment dismissing the action is affirmed.
 
 
 
 *
 Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation