834 F.2d 974
 26 ERC 2081, 18 Envtl. L. Rep. 20,305
 James L. DICKERSON, Lareeta H. Dickerson and Amtreco, Inc.,
Plaintiffs- Appellants,
v.
ADMINISTRATOR, ENVIRONMENTAL PROTECTION AGENCY, Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellee,
v.
James L. DICKERSON, Lareeta H. Dickerson and Amtreco, Inc.,
Defendants- Appellants.
 No. 87-8396
Non-Argument Calendar.
 United States Court of Appeals,
Eleventh Circuit.
 Dec. 30, 1987.
 
 Berrien L. Sutton, Sutton, Reddick, Hackel & Hackel, Homerville, Ga., for plaintiffs-appellants.
 Martin W. Matzen, U.S. Dept. of Justice, Robert L. Klarquist, Washington, D.C., for defendant-appellee.
 Appeal from the United States District Court For the Middle District of Georgia.
 Before TJOFLAT, VANCE and EDMONDSON, Circuit Judges.
 VANCE, Circuit Judge:
 
 
 1
 Appellants appeal the district court's decision dismissing their complaint seeking declaratory and injunctive relief from a proposed cleanup response action by the Environmental Protection Agency (EPA), 660 F.Supp. 227. The district court concluded that the EPA's decision to enter appellants' property and remove hazardous substances was not arbitrary and capricious and that appellants may not interfere with the cleanup process. The district court also held that appellants were not entitled to a pre-enforcement judicial review of the EPA's proposed cleanup action. We affirm.
 
 
 2
 Dickerson owns a 5.6 acre tract of land located in Homerville, Georgia. Amtreco, Inc. operated a wood product preserving facility on the property until 1980. Creosote, a hazardous substance under 42 U.S.C. Sec. 9601(14), is a primary chemical in the wood preserving process. The EPA conducted an investigation of the site on May 16, 1984 and found substantial quantities of creosote.[1] The EPA concluded that the hazardous waste should be removed from the site.
 
 
 3
 On July 19, 1984 the EPA issued an administrative order pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. Secs. 9601-75, requiring appellants to commence the cleanup of the Homerville site. The order stated that "[t]here may be an imminent and substantial endangerment to the public health and welfare and the environment due to the release and threat of release of hazardous substances" at the facility. The order required the cleanup process to begin by July 24, 1984. The EPA extended the deadline after an informal conference to consider appellants' proposed plan for the site cleanup. The EPA subsequently rejected appellants' proposal, however, because it did not "comply with the terms of the order or provide an alternative which would accomplish the same objectives." The EPA informed appellants that the EPA would begin its cleanup process on September 5, 1984.
 
 
 4
 On September 4, 1984 appellants filed an action for declaratory and injunctive relief from the EPA's proposed cleanup action. The district court granted a temporary restraining order. Seeking access to the site for the cleanup process, the EPA filed its own action for declaratory and injunctive relief on September 21, 1984. The EPA also filed a motion to dismiss appellants' complaint for lack of subject matter jurisdiction. After consolidating the two actions, the district court ruled that the EPA had the right to enter the site and commence the cleanup process and that appellants could not obtain pre-enforcement judicial review of the response action.
 
 
 5
 CERCLA gives the EPA the authority to remove or arrange for the removal of hazardous substances whenever any hazardous substance is released into the environment or there is a substantial threat of such release. 42 U.S.C. Sec. 9604(a)(1).[2] In this case the EPA determined that there was a substantial threat that creosote, a hazardous substance under 42 U.S.C. Sec. 9601(14),[3] may be released into the environment. After an attempt to have the owner clean up the site, the EPA brought an action seeking relief from appellants' interference with the EPA's right under Sec. 9604 to enter the Homerville site and remove the hazardous substances. Courts must enjoin any interference with the EPA's entry to property "unless under the circumstances of the case the demand for entry or inspection is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. Sec. 9604(e)(5)(B)(i).
 
 
 6
 The record supports the district court's decision that the EPA had a reasonable basis to believe there had been or could be a release of hazardous substances into the environment at the Homerville site. The district court found that the general condition of the Homerville site, with large quantities of creosote contained in various containers, the evidence of creosote in the soil and vegetation, and the close proximity of wells, left the court with an "inescapable duty" to conclude that the EPA was authorized to enter and conduct a response action at the site.
 
 
 7
 Appellants contend that the EPA must demonstrate that the hazardous substance presents an imminent and substantial danger to the public and environment before initiating any action. The statute, however, provides that the EPA must establish "an imminent and substantial danger to the public health or welfare" only when it seeks to remove pollutants and contaminants. 42 U.S.C. Sec. 9604(a)(1)(B). A similar finding is not necessary to remove a hazardous substance. See Lone Pine Steering Comm. v. EPA, 777 F.2d 882, 886 (3d Cir.1985), cert. denied, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986). But see Solid State Circuits, Inc. v. EPA, 812 F.2d 383, 387 & n. 5 (8th Cir.1987).
 
 
 8
 Appellants also contend that they are entitled to pre-enforcement judicial review of the EPA's proposed cleanup action. Appellants maintain that the EPA's order stating that it will commence the cleanup process is a final agency order subject to judicial review under the Administrative Procedure Act (APA), 5 U.S.C. Secs. 702, 704. Appellants argue that the EPA has not established by clear and convincing evidence that Congress intended to prohibit judicial review under 42 U.S.C. Sec. 9604(a).
 
 
 9
 In Block v. Community Nutrition Inst., 467 U.S. 340, 345, 104 S.Ct. 2450, 2453, 81 L.Ed.2d 270 (1984), the Supreme Court noted that while the APA confers a general right of review in 5 U.S.C. Sec. 702, it "withdraws that cause of action to the extent the relevant statute 'preclude[s] judicial review,' 5 U.S.C. Sec. 701(a)(1)." The Court continued, "[w]hether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." Id.; see also Wheaton Indus. v. EPA, 781 F.2d 354, 356-57 (3d Cir.1986). We agree with the district court that CERCLA precludes pre-enforcement judicial review of EPA response actions.
 
 
 10
 A recent amendment to CERCLA, 42 U.S.C. Sec. 9613(h), clearly provides that federal courts do not have subject matter jurisdiction for pre-enforcement reviews of EPA removal actions pursuant to section 9604.[4] See Solid State Circuits, 812 F.2d at 386 & n. 1. This legislation reflects Congress' intent to preclude pre-enforcement judicial review and is consistent with earlier cases barring such review. See, e.g., Wagner Seed Co. v. Daggett, 800 F.2d 310, 314-15 (2d Cir.1986); Wheaton Indus., 781 F.2d at 356-57; Barnes v. United States Dist. Court for the W. Dist. of Wash., 800 F.2d 822 (9th Cir.1986); Lone Pine, 777 F.2d at 886-88; J.V. Peters & Co. Inc., v. Administrator, EPA, 767 F.2d 263, 264-65 (6th Cir.1985).
 
 
 11
 The purpose of CERCLA provides further evidence that Congress did not intend to provide for pre-enforcement judicial review. The primary purpose of CERCLA is "the prompt cleanup of hazardous waste sites," J.V. Peters, 767 F.2d at 264 (quoting Walls v. Waste Resource Corp., 761 F.2d 311, 318 (6th Cir.1985)). Appellants argue that their liability for the costs of the proposed cleanup should be determined prior to the EPA's response action. It has been held, however, that "[t]o delay remedial action until the liability situation is unscrambled would be inconsistent with the statutory plan to promptly eliminate the sources of danger to health and environment." Lone Pine, 777 F.2d at 886; Wheaton Indus., 781 F.2d at 356; J.V. Peters, 767 F.2d at 264.
 
 
 12
 Judicial review of the EPA's action is available when the EPA files a cost recovery suit under 42 U.S.C. Sec. 9607.[5] Appellants maintain that 42 U.S.C. Sec. 9607(b) provides only three defenses for potentially responsible parties. They argue that due to the limited scope of the defenses,[6] pre-enforcement judicial review is necessary to prevent liability for an inappropriate response action. While this provision seems to impose "a form of strict liability," J.V. Peters, 767 F.2d at 266, the government may obtain reimbursement only for removal costs "consistent with the national contingency plan." 42 U.S.C. Sec. 9604(a)(1). The national contingency plan requires response actions to be "cost-effective." 42 U.S.C. Sec. 9605(a)(7). Appellants therefore are not denied an opportunity to escape liability for any EPA action which is inconsistent with the national contingency plan.[7] In sum, we hold that the district court properly dismissed appellants' complaint seeking declaratory and injunctive relief.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Over 250 drums of creosote constituents and other hazardous substances were located at the wood processing facility. Large quantities of waste creosote also were found in unlined surface impoundments at the site. Several wells were located within one quarter mile of the facility, but the EPA's inspection determined that the waste creosote had not yet contaminated the wells. The EPA also discovered that the soil and vegetation at the site contained evidence of creosote
 
 
 [2]
 42 U.S.C. Sec. 9604(a)(1) provides in part:
 (1) Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment.
 
 
 [3]
 The appellants do not contest the EPA's finding that creosote is a hazardous substance under 42 U.S.C. Sec. 9601(14)
 
 
 [4]
 42 U.S.C. Sec. 9613(h) provides:
 (h) Timing of review
 No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:
 (1) An action under section 9607 of this title to recover response costs or damages or for contribution.
 (2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.
 (3) An action for reimbursement under section 9606(b)(2) of this title.
 (4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.
 (5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.
 
 
 [5]
 42 U.S.C. Sec. 9607(a) provides in part:
 Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section--
 (1) the owner and operator of ... a facility,
 (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substance were disposed of,
 * * *
 ... shall be liable for--
 (A) all costs of removal or remedial action incurred by the United States Government or a State ... not inconsistent with the national contingency plan;
 (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
 (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release.
 
 
 [6]
 The defendant in a cost-recovery suit can escape liability by establishing that "(1) an act of God; (2) an act of war; (3) an act or omission of a third party ...; or (4) any combination of the foregoing" caused the release or threat of release of the hazardous substance. 42 U.S.C. Sec. 9607(b)
 
 
 [7]
 Appellants also argue that barring pre-enforcement judicial review constitutes a denial of due process because some of the creosote which will be removed from the site may be resold. "In property deprivation cases, due process does not require access to the courts before final administrative action." Lone Pine, 777 F.2d at 886. Similarly, due process rights are not violated even assuming appellants suffer some financial loss