**UNITED STATES of America, Plaintiff,**

v.

**AMTRECO, INC., et al., Defendants.**

**Civ. A. 90–31–VAL (WDO).**

United States District Court,
M.D. Georgia,
Valdosta Division.

Dec. 22, 1992.
As Corrected Feb. 9, 1993.

See also 790 F.Supp. 1576.

Frank L. Butler, III, Macon, GA, Valerie Ann Lee, Heidi E. Weckwert, Washington, DC, for U.S.

Howard Bridges Slocumb, Berrien L. Sutton, Homerville, GA, for Amtreco, Inc. and James L. Dickerson.

Alan M. Wolper, Charles A. Perry, Atlanta, GA, for American Tel. and Tel. and Western Elec.

J. Converse Bright, Valdosta, GA, for Lee Engineering & Const. Co.

## ORDER

OWENS, District Judge.

Before the court are the parties' cross-motions for summary judgment in this action to recover response costs under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA"). The United States seeks partial summary judgment on the issue of liability and on some of defendants' defenses. Defendants seek summary judgment on the entire case. After careful consideration of the arguments of counsel, the relevant case law, and the

record as a whole, the court issues the following order.

## FACTS

This case has a long and complex history in this court. On March 31, 1977, defendant James Dickerson incorporated Amtreco, Inc. ("Amtreco"), a business which treated and sold wooden fence posts. Dickerson was the president, sole shareholder, and sole director of Amtreco.

In the summer of 1977, construction of a wood treatment plant for Amtreco began. The plant was constructed upon a 5.6 acre tract of land in Homerville, Georgia, that was owned by Dickerson. Between September 1977 and March 1978, thousands of gallons of creosote, a primary chemical used in the wood-treating process that is classified as a hazardous substance under 42 U.S.C. § 9601(14), were delivered to the Amtreco site.

On March 30, 1978, Dickerson conveyed the property on which the plant was constructed to Amtreco in fee simple. It is unclear whether Amtreco began wood-treating operations before or after the conveyance; however, as disputed facts are to be construed in favor of Amtreco and Dickerson for purposes of this motion, the court will assume that wood-treating operations began on March 30, 1978, when Dickerson no longer owned the property. Amtreco has held title to the property through the time of the filing of this lawsuit.[1]

Amtreco operated the wood treatment plant until sometime in 1980, when it was forced to close due to financial hardship. In January, 1984, representatives from the Environmental Protection Division of the Georgia Department of Natural Resources ("Georgia EPD") entered the Amtreco site, and, after collecting and testing samples

from the site, they notified the Environmental Protection Agency ("EPA") in May. On May 16, 1984, the EPA conducted an investigation of the Amtreco site and determined that hazardous wastes were present[2] and that they should be removed from the site.

On July 19, 1984, the EPA issued an administrative order requiring Dickerson and Amtreco[3] to initiate a cleanup at the Amtreco site. Under the administrative order, Dickerson and Amtreco were given until July 24, 1984, to begin the cleanup, and they were to complete the cleanup within forty-two days. Dickerson and Amtreco submitted a proposal to the EPA to use biodegradation to clean the site, and the EPA extended the July deadline in order to consider the proposal.

On August 27, 1984, the EPA rejected the proposal on the ground that it was not an adequate method to remove the waste from the Amtreco site. The EPA then informed defendants that it would begin a cleanup of the site on September 5, 1984, using funds from the Hazardous Substance Response Trust Fund ("Superfund").

On September 4, 1987, Dickerson and Amtreco sought to block the EPA action by filing a suit in this court for injunctive and declaratory relief from the EPA's proposed cleanup. This court ultimately denied the relief and held that the EPA was entitled to enter the Amtreco site and conduct a cleanup action there. *United States v. Dickerson*, 660 F.Supp. 227 (M.D.Ga.1987) (*"Dickerson I"*). This court specifically found that the EPA had established that "there has been a release or may be a release of a hazardous substance" at the site, *id.* at 231; therefore, the EPA had the right to conduct a response action. *Id.*[4] The Elev-

1. For convenience, the court will refer to the property on which the Amtreco plant was located as the "Amtreco site."

2. The Amtreco site contained approximately 250 drums of creosote compounds and other hazardous substances. In addition, two lagoons and five tanks on the site contained creosote wastes. There were also PCP's and other hazardous substances in varying amounts in containers on the property.

3. Lareeta Dickerson, Dickerson's wife, was also named in the EPA administrative order.

4. Dickerson and Amtreco also sought in *Dickerson I* to be declared nonliable for any response costs which the EPA might seek against them in the future. This court determined that it had no subject matter jurisdiction over the issue. *Dickerson I,* at 231.

enth Circuit affirmed *Dickerson I* in *Dickerson v. Administrator, Environmental Protection Agency,* 834 F.2d 974 (11th Cir. 1987).

On July 2, 1987, the EPA selected off-site transport as the method to remove the hazardous materials from the Amtreco site, and funding for the cleanup was authorized. The actual cleanup took place from August 10, 1987, to March 18, 1988.

On April 26, 1990, the United States filed its complaint in this court seeking from defendants the recovery of all costs connected to the cleanup, an amount in excess of $1,079,955. In addition, the United States seeks civil penalties to compel defendants to comply with certain information requests.

In its motion, the United States seeks partial summary judgment on the issue of liability and on some of defendants' defenses. Defendants deny all liability and seek summary judgment on all issues in the case.

### DISCUSSION

■ The Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") was enacted by Congress in December 1980. It authorizes the EPA to respond [5] to releases or threatened releases of hazardous substances into the environment through such means as investigation, evaluation, and cleanup. *See, e.g., Dickerson v. Administrator, Environmental Protection Agency,* 834 F.2d 974, 976 (11th Cir.1987). CERCLA also establishes the Hazardous Substances Response Trust Fund ("Superfund") to fund these EPA responses. 42 U.S.C. § 9631.

■ In addition, CERCLA provides that the EPA can recover the costs of its response activities from responsible parties. 42 U.S.C. § 9607(a). This provision serves not only to replenish the Superfund for future cleanup activities, but also to place the ultimate responsibility for cleaning up hazardous waste problems upon those who

created the problems. *See United States v. Fleet Factors Corp.,* 901 F.2d 1550, 1553 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 752, 112 L.Ed.2d 772 (1991).

In this case, the United States is seeking to recover the costs it incurred in cleaning up the Amtreco site. In order to narrow the issues, the United States seeks partial summary judgment on CERCLA liability against defendants Amtreco and Dickerson and also on some of defendants' affirmative defenses. Defendants have filed a cross-motion for summary judgment.

### I. LIABILITY UNDER CERCLA

■ In order to establish liability under CERCLA, 42 U.S.C. § 9607(a), the United States must prove the following four elements:

1. The Amtreco site is a facility as defined in 42 U.S.C. § 9601(9).
2. There was a release or threatened release at the site.
3. The government incurred response costs as a result of the release or threatened release.
4. Defendants are potentially responsible persons as defined in 42 U.S.C. § 9607(a)(1)–(a)(4).

*E.g., United States v. Mottolo,* 695 F.Supp. 615, 622–23 (D.N.H.1988). A determination of the amount of recoverable costs is not an element of liability. *E.g., United States v. Stringfellow,* 661 F.Supp. 1053, 1059 (C.D.Cal.1987).

### A. The Amtreco Site Is a Facility.

There is no dispute that the Amtreco site is a facility. Section 9601(9) of CERCLA defines "facility" as follows:

(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited,

---

**5.** A "response" is defined in CERCLA as "remove, removal, remedy, and remedial action, all such terms (including the terms 'removal'

and 'remedial action') include enforcement activities related thereto." 42 U.S.C. § 9601(25).

stored, disposed of, or placed, or otherwise come to be located; ....

Since creosote and other hazardous wastes were present on the Amtreco site prior to the EPA cleanup, the Amtreco site is a facility under CERCLA.

**B. A Release or Threatened Release Occurred at the Amtreco Site.**

The second element, that a release or threatened release occurred at the Amtreco site, was previously determined by this court in *Dickerson I*, 660 F.Supp. at 231. Defendants are precluded from retrying this issue by the doctrine of collateral estoppel.

Collateral estoppel occurs if the following conditions are met:

(1) the issue at stake was identical to the one involved in the prior litigation;

(2) the issue was actually litigated in the prior litigation; and

(3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in that earlier action.

*In re Ikner*, 883 F.2d 986, 989 (11th Cir. 1989) (citing *In re Halpern*, 810 F.2d 1061, 1064 (11th Cir.1987)); *United States v. Kramer*, 757 F.Supp. 397, 417 (D.N.J.1991).

In *Dickerson I*, Dickerson and Amtreco attempted to prevent the EPA from entering the Amtreco site and conducting a CERCLA response action while the United States sought to enforce the EPA's order to clean the site. In order to establish that the EPA had the right to enter the Amtreco site, the United States was only required to show that there was a release or threatened release at the site. *Dickerson I*, at 231; 42 U.S.C. § 9604(e)(5)(B).

This court first made the following factual findings concerning the physical condition of the Amtreco site:

[An EPA] inspection [of the site] ... revealed the presence of two hundred and fifty-two drums in various conditions containing creosote constituents and hazardous solvents such as methyl ethyl ketone and benzene. Also present at the site are a pressure cylinder, two 20,000 gallon tanks and one 10,000 gallon tank, all of which contain, in various amounts, waste creosote. The site also contains two large, unlined surface impoundments, that contain large quantities of waste creosote.

Ten residences which use shallow wells to obtain drinking water from a nearby aquifer are located within one quarter mile of the site. The nearest well to the site being used for drinking purposes has been replaced with a deep well. There is no evidence, as of yet, that waste creosote has contaminated any of these wells, nor is there any evidence that this creosote has permeated into the water supply generally. Throughout the [Amtreco] site, soil and vegetation stained by creosote are readily visible. The site is not secured from the public, and there are no containment walls that might prevent the spread of creosote during a heavy rainstorm.

*Id.* at 230.

This court then determined that these facts were sufficient to establish that a release or threatened release was present at the site and that the EPA was authorized to enter the site and to conduct a response action:

In order to establish its right to conduct a response action, therefore, the EPA must establish that it has a reasonable basis to believe that there has been or may be a release of a hazardous substance in the environment.... While this court is not completely convinced that the site in question is an imminent and substantial danger to the public health or welfare, it appears that Congress has already determined that substances classified as being hazardous, pursuant to 42 U.S.C. § 9601(14), meet that criterion as a matter of law, and, thus, since the EPA contends that hazardous substances have been and continue to be released at the Homerville site, the EPA need only demonstrate that there has been a release or may be a release of a hazardous substance. It is undisputed that creosote is a known carcinogen and has been classified by Congress as being hazardous. This fact,

combined with the general condition of the site as previously described, leaves this court with the inescapable duty of concluding that the EPA is authorized to conduct a response action at the site. *Id.* at 231.

Thus, this court has already determined that a release or threatened release occurred at the Amtreco site. This issue is identical to that required to establish the second element of CERCLA liability in this action. Moreover, the issue was actually litigated in *Dickerson I,* and it was necessary and critical to the judgment in that litigation. Therefore, collateral estoppel applies to the issue of whether a release or threatened release occurred at the Amtreco site, and defendants are precluded from relitigating it.

C. The United States Incurred Costs Due to the Release or Threatened Release at the Amtreco Site.

■ The third element required to establish CERCLA liability is a showing that the United States incurred costs as a result of the release or threatened release at the Amtreco site. It is undisputed that the United States has incurred extensive costs as a result of the release[s] at the Amtreco site since the EPA's initial involvement there in 1984. These costs include costs for monitoring, assessing, and evaluating the release of hazardous substances at the Amtreco site, costs of implementing the response action, and costs for litigation. It is of no consequence that some of these costs are not recoverable from defendants; for purposes of establishing liability, the United States need only show that it has incurred some costs. *E.g., United States v. Mottolo,* 695 F.Supp. 615, 630 (D.N.H. 1988).

D. Defendants Amtreco and Dickerson are Potentially Responsible Parties.

The final element which the United States must prove to establish CERCLA liability is that defendants Dickerson and Amtreco are potentially responsible persons under 42 U.S.C. § 9607(a). Under § 9607(a)(1), "the owner and operator of a vessel or a facility" are liable for costs incurred by the United States in a response action.

1. *Defendant Amtreco*

■ There is no dispute that Amtreco was both the owner and operator of the Amtreco site from March 30, 1978, until operations ceased sometime in 1980. Moreover, Amtreco still holds fee simple title to the Amtreco site. Thus, Amtreco is a potentiality responsible person under CERCLA.

2. *Defendant Dickerson*

■ Another potentially liable person under CERCLA is defined in § 9607(a)(2) as "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." Dickerson owned the Amtreco site until he conveyed the property to Amtreco in March 1978. Furthermore, there is no dispute that, prior to the March 1978 conveyance, Amtreco ordered several gallons of creosote and stored the creosote on the site.

However, the mere storage of hazardous waste at a facility does not constitute "disposal" of hazardous waste. In 42 U.S.C. § 9601(29), CERCLA provides that the term "disposal" has the meaning set forth in the Solid Waste Disposal Act, 42 U.S.C. § 6903. Section 6903(3) defines "disposal" as follows:

[T]he discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

In addition, § 6903(33) specifically excludes "storage" from the disposal definition:

The term "storage", when used in connection with hazardous waste, means the containment of hazardous waste, either on a temporary basis or for a period of years, in such a manner as not to constitute disposal of such hazardous waste.

The court is assuming for purposes of the United States' motion that creosote was not used for wood treating during the time that Dickerson owned the Amtreco site, but merely stored there. Thus, Dickerson cannot be considered an owner under § 9607(b)(2) for purposes of the United States' motion.

■ In the alternative, the United States argues that Dickerson is a potentially responsible party under § 9607(b)(1), as the owner and operator of the Amtreco site. An individual who is a sole stockholder of a corporation and actively participates in its management can be held personally liable as an owner and operator. *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1052 (2d Cir.1985). The United States also contends that Dickerson is the alter ego of Amtreco and therefore personally liable in this capacity.

In *Shore Realty*, the Second Circuit found that the sole shareholder and officer of a realty company, which had purchased a hazardous waste disposal site, was personally liable as the owner and operator of the site. The defendant incorporated the realty company solely for the purpose of purchasing the disposal site. In addition, the defendant made, directed, and controlled all corporate decisions and actions. *Id.* at 1038.

The Second Circuit found that CERCLA implies that "an owning stockholder who manages the corporation, such as [defendant], is liable under CERCLA as an 'owner and operator.'" The court found this implication in the definition of "owner or operator" in 42 U.S.C. § 9601(20)(A), which expressly excludes "a person, who, without participating in the management of a ... facility, holds indicia of ownership primarily to protect his security interest in the facility." *Id.* (emphasis added).

■ This court agrees with the Second Circuit and finds that the term "owner" in CERCLA should be construed broadly such that a sole stockholder who actively participates in the management of the corporation

is personally liable under CERCLA as an owner and operator. This finding is not only supported by the case law, *see also United States v. Northernaire Plating Co.*, 670 F.Supp. 742 (W.D.Mich.1987); *United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 190 (W.D.Mo.1985); but also by the legislative history of CERCLA. *See* H.R.Rep. No. 172, 96th Cong., 2d Sess. 36, *reprinted in* 1980 U.S.Cong. & Admin.News 6160, 6181 (the term "owner" is "to include not only those persons who hold title to a vessel or facility, but those who, in the absence of holding title, possess some equivalent evidence of ownership").

■ It is undisputed that Dickerson is the sole stockholder, sole director, and president of Amtreco. Thus, the question before the court is whether Dickerson actively participated in the management of the corporation. The focus of this inquiry is whether Dickerson had the authority to control hazardous waste disposal practices at Amtreco or the authority to abate the pollution. *See Shore*, 759 F.2d at 1038; *Idaho v. Bunker Hill Co.*, 635 F.Supp. 665, 672 (D.Idaho 1986).

As president, sole director, and sole stockholder of Amtreco, it is undisputed that Dickerson had this authority. He controlled all corporate decisions. While there were two other officers of Amtreco,[6] they were officers in name only and took no part in Amtreco affairs.

There are other facts indicating that Dickerson was an active participant in the management of Amtreco. He had the authority to hire and fire employees at the Amtreco site and to direct their activities. He dealt with customers, and he signed checks on behalf of Amtreco. He made extensive loans to Amtreco, thereby supplying capital. He also had an office on the site.

Furthermore, Dickerson actively participated in the wood-treating process. He made the arrangements associated with the construction of the plant, and he purchased

---

**6.** Lareeta Dickerson (Dickerson's wife) was secretary/treasurer of Amtreco, and James Nolan was its vice president.

creosote for Amtreco's wood treating operations in person. These facts establish that Dickerson actively participated in the management of Amtreco; therefore, Dickerson is liable as an owner and operator under CERCLA.

The United States also contends that Dickerson is individually liable as the alter ego of Amtreco. As Dickerson has been found to be personally liable as the sole shareholder and an active participant in the management of Amtreco, it is unnecessary to address the government's "piercing the corporate veil" argument.

Thus, the United States has established its prima facie case of CERCLA liability against Dickerson and Amtreco for costs incurred during the cleanup of the Amtreco site. The undisputed facts show that (1) the Amtreco site is a facility; (2) there was a release or threatened release at the site; (3) the United States incurred costs as a result of the release or threatened release; and (4) Dickerson and Amtreco are the owners and operators of the site. Therefore, the United States is entitled to summary judgment on the issue of liability unless defendants can establish an affirmative defense to liability.

## II. DEFENSES TO CERCLA LIABILITY

Defendants have asserted numerous affirmative defenses to liability on the United States' CERCLA claim. The court will address each defense in turn.

### A. Cost Defenses

Defendants have raised several defenses that are related to the costs which the government may recover in this action. The question of the amount of recoverable costs is not presently before the court. Therefore, these defenses will be addressed at the trial of this case when the court will determine the actual amount of recoverable costs. However, a brief discussion of each defense will be helpful.

#### 1. Inconsistency with the National Contingency Plan

One of these cost defenses concerns the issue whether the costs incurred by the United States during the cleanup of the Amtreco site are not inconsistent with the National Contingency Plan ("NCP"). The NCP is a set of procedures and standards which the United States must follow in conducting a response to a release of a hazardous substance. *See* 42 U.S.C. § 9605.

Under CERCLA, all costs that the United States may recover from a responsible party in a CERCLA response action must not be inconsistent with the NCP. 42 U.S.C. § 9607(a)(4)(A). Defendants contend that the United States must establish that all its incurred costs are not inconsistent with the NCP before it can obtain partial summary judgment on the issue of liability.

■ However, it is well established that a showing that costs are not inconsistent with the NCP is not required for CERCLA liability in government actions.[7] *See United States v. Mottolo*, 695 F.Supp. 615, 630 (D.N.H.1988) ("Liability hinges on whether plaintiffs incurred any response costs.... Whether some of those response costs are inconsistent with the NCP is a triable issue of fact which goes to the amount, not the fact, of defendants' liability."); *see also United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1508 (6th Cir.1989), *cert. denied*, 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990); *United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 747–48 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987); *United States v. Kramer*, 757 F.Supp. 397 (D.N.J.1991); *United States v. Western Processing Co.*, 734 F.Supp. 930, 942–43 (W.D.Wash.1990).

■ In addition, it is well established that defendants bear the burden of showing that the United States' incurred costs are inconsistent with the NCP. *See R.W. Meyer, Inc.*, 889 F.2d at 1508; *Northeast-*

---

7. This contrasts with private recovery actions in which a private party must show that incurred costs are consistent with the NCP in establishing

liability. *See, e.g., County Line Invest. Co. v. Tinney*, 933 F.2d 1508 (10th Cir.1991).

*ern Pharmaceutical,* 810 F.2d at 747–48; *Mottolo,* 695 F.Supp. at 630. Thus, the issue whether the costs recoverable by the United States are not inconsistent with the NCP is not relevant to the issue of liability and will not be considered at this time.

### 2. *Removal versus Remedial Action*

Defendants also contend that the response action conducted by the United States was a remedial action rather than a removal action. When conducting a remedial action, the United States must comply with different NCP procedures than those required for removal actions. Because NCP compliance is the focus of the remedial/removal inquiry, this issue will be addressed when the court determines actual recoverable costs. *See Channel Master Satellite v. JFD Electronics Corp.,* 748 F.Supp. 373 (E.D.N.C.1990).

### 3. *Cost Effectiveness*

Defendants contend that the United States was required to be cost effective in conducting its response. Again, this defense is related to recoverable costs and will not be considered at this time.

### 4. *No Cleanup Occurred*

Defendants contend that the United States did not actually clean up the Amtreco site, and therefore, they should not be liable. This argument has no merit. However, to the extent that defendants are essentially challenging the actions taken by the EPA during the cleanup as not being in compliance with the NCP, the court will consider this argument when it determines recoverable costs.

### 5. *Petroleum Exclusion*

Defendants contend that some of the hazardous waste removed from the Amtreco site was petroleum, and under CERCLA, petroleum is expressly excluded from the definition of hazardous waste. 42 U.S.C. § 9601(14). Again, this issue goes to the amount of costs rather than liability; therefore, it is not appropriate for the court to consider at this time.

### 6. *Owner Response*

Defendants contend that the EPA was arbitrary and capricious in not adopting defendants' cleanup proposal. This is related to the EPA's selection of a response action and will be addressed when the court determines recoverable costs.

### B. Statutory CERCLA Defenses

Defendants have also raised defenses for which CERCLA expressly provides. Under 42 U.S.C. § 9607(b), certain defenses are available to challenge a CERCLA claim:

There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—

(1) an act of God;

(2) an act of war;

(3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or

(4) any combination of the foregoing paragraphs.

Defendants have raised two of these affirmative defenses. They claim that the state of Georgia is responsible for some of the contamination at the site; therefore,

they are entitled to the third-party defense under § 9607(b)(3).

This argument has no merit because the statute expressly states that defendants have to show that the release or threatened release was solely caused by the act of a third party. Thus, defendants have to show "'the complete absence of causation'" on their part in order to satisfy this defense. *United States v. Kramer,* 757 F.Supp. 397, 411 (D.N.J.1991) (quoting *United States v. Monsanto Co.,* 858 F.2d 160, 168 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989)). Even if the State of Georgia did cause some of the contamination at the site, defendants cannot show that the state is solely responsible.

Defendants also claim that an act of God (a flood) caused the contamination. This contention has no merit because the flood referred to did not occur until after the cleanup was already in progress. Hence, none of the statutory CERCLA defenses are available to defendants, and the United States is entitled to summary judgment on these affirmative defenses.

C. Equitable Defenses

Defendants have raised the equitable defenses of laches, estoppel, and unclean hands. Whether equitable defenses can be raised in a CERCLA recovery action has not been decided by the Eleventh Circuit. Other courts are split over this issue.

One group of courts has determined that equitable defenses are not available in CERCLA recovery actions. *E.g., Smith Land and Improv. Corp. v. Celotex Corp.,* 851 F.2d 86, 80 (3d Cir.1988), *cert. denied* (1989), 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969; *United States v. Pretty Products, Inc.,* 780 F.Supp. 1488, 1500 (S.D.Ohio 1991); *United States v. Kramer,* 757 F.Supp. 397, 425 (D.N.J.1991); *General Electric Co. v. Litton Business Systems, Inc.,* 715 F.Supp. 949, 955–56 (W.D.Mo. 1989); *Kelley v. Thomas Solvent Co.,* 714 F.Supp. 1439, 1445–46 (W.D.Mich.1989).

This finding is based upon the language of § 9607(a), which states that CERCLA liability is "subject only to the defenses set forth in subsection (b) of this section." 42 U.S.C. § 9607(a) (emphasis added). This language is unambiguous, and, as a general rule, "equitable defenses 'cannot be asserted against the government when it acts in its sovereign capacity to protect the public health and safety.'" *United States v. Pretty Products, Inc.,* 780 F.Supp. 1488 (S.D.Ohio 1991) (quoting *United States v. Stringfellow,* 661 F.Supp. 1053, 1062 (C.D.Cal.1987)). Therefore, the defenses based upon an act of God, act of war, or act of a third party are the only affirmative defenses that may be asserted in a CERCLA action.

Another group of courts has determined that equitable defenses are available in CERCLA actions. *E.g., United States v. Marisol, Inc.,* 725 F.Supp. 833 (M.D.Pa. 1989); *United States v. Mottolo,* 695 F.Supp. 615, 626–27 (D.N.H.1988); *Violet v. Picillo,* 648 F.Supp. 1283 (D.R.I.1986).

This finding is based upon the fact that in a CERCLA action, a plaintiff is essentially seeking restitution, an equitable remedy. Therefore, the defendant should be able to assert equitable defenses. *See United States v. Mottolo,* 695 F.Supp. 615 (D.N.H. 1988). Furthermore, 42 U.S.C. § 9601(32) provides that "'liability' under this subchapter shall be construed to be the standard of liability which obtains under section 1321 of Title 33" (the Clean Water Act ("CWA")), and the Supreme Court has held that equitable defenses are available in actions under the CWA. *Id.* at 626–27 (citing *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 318, 102 S.Ct. 1798, 1806, 72 L.Ed.2d 91 (1982)). Finally, "'equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command.'" *Id.* at 627 (citing *Weinberger,* 456 U.S. at 313, 102 S.Ct. at 1803–04). CERCLA never even refers to equity jurisdiction. Thus, for these reasons, some courts have found that equitable defenses can be raised in CERCLA actions.

This court is persuaded by the reasoning of those courts finding that equitable defenses are not available in CERCLA recovery actions. The statute expressly states that "[n]otwithstanding any other provision

or rule of law, [liability under § 9607(a) is] "subject only to the defenses set forth in subsection (b)." 42 U.S.C. § 9607(a) (emphasis added). This language is completely unambiguous.

Moreover, this limitation only affects CERCLA recovery actions under § 9607(a). Actions brought under other CERCLA provisions are unaffected. Thus, this finding does not contradict *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). *See United States v. Kramer*, 757 F.Supp. 397, 424 (D.N.J.1991). In fact, CERCLA specifically provides that in actions brought under § 9606(a), "the court ... shall have jurisdiction to grant such relief as the public interest and the equities of the case may require."

Therefore, equitable defenses are not available in CERCLA recovery actions. The United States is entitled to summary judgment on defendants' affirmative defenses based upon laches, unclean hands, and estoppel.

## D. Other Miscellaneous Defenses

Defendants have raised numerous other defenses in their ninety-one page brief for summary judgment in this case. The court will briefly address each defense.

### 1. *Constitutionality of CERCLA*

Defendants have raised several defenses relating to the constitutionality of CERCLA. They first argue that CERCLA violates their due process rights. This argument is essentially a claim that the retroactive application of CERCLA violates due process and operates as an unconstitutional ex post facto law. Courts have universally rejected this type of constitutional challenge to CERCLA. *E.g., United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726 (8th Cir.1986); *United States v. Hooker Chemicals & Plastics Corp.*, 680 F.Supp. 546 (W.D.N.Y.1988); *United States v. Dickerson*, 640 F.Supp. 448 (D.Md.1986). In addition, CERCLA is not an unconstitutional *ex post facto* law. *United States v. Monsanto Co.*, 858 F.2d 160 (4th Cir.1988); *United States v. Kramer*, 757 F.Supp. 397 (D.N.J.1991).

Defendants' only other defense relating to the constitutionality of CERCLA is their nineteenth defense, in which they allege that they were denied equal protection. Defendants' equal protection claim was found insufficient in *Amtreco, Inc. v. O.H. Materials, Inc.*, 802 F.Supp. 440 (M.D.Ga.1992). The same reasoning applies in this case to show that defendants' equal protection defense is insufficient. Thus, plaintiff is entitled to summary judgment on all of defendants' defenses relating to the constitutionality of CERCLA.

### 2. *"Land Ban" Defense*

Defendants contend that the EPA was not in compliance with 42 U.S.C. § 9621(d)(3) when it deposited hazardous waste in Alabama. Section 9621(d)(3) prohibits the disposal of hazardous waste in an unpermitted facility. This argument has no merit because the landfill in which the Amtreco waste was deposited was a permitted facility at the time of the cleanup. Therefore, the United States is entitled to summary judgment on this defense.

### 3. *Competitive Bidding*

Defendants contend that the United States did not comply with the competitive bidding requirements of 41 U.S.C. § 253(c)(2). However, the United States has put forth undisputed evidence that the independent contractor in this case did competitively bid for the cleanup contract. Accordingly, the United States is entitled to summary judgment on this argument.

### 4. *Six–Month Statute of Limitations*

Defendants contend that under 42 U.S.C. § 9604(c)(1), the United States cannot recover any costs incurred after six months from the initial response action in this case. They claim that the initial response began in May 1984. Therefore, any costs incurred after November 1984 are not recoverable.

This action has no merit first, because, due to actions of defendants to delay the cleanup, the actual cleanup did not begin until August 1987 and was completed in

March 1988. In addition, at the time of this cleanup, the applicable law provided that cleanup actions could take up to a year. 42 U.S.C. § 9604(c)(1). As the cleanup at the Amtreco site took less than a year, the United States is entitled to summary judgment on this issue.

## CONCLUSION

The United States' motion for partial summary judgment on the issue of liability is GRANTED. Defendants Dickerson and Amtreco are liable for all recoverable costs incurred during the cleanup of the Amtreco site. The amount of these recoverable costs will be determined at a later trial.

The United States' motion for partial summary judgment on defendants' affirmative defenses is GRANTED on the following defenses:

1. Act of God
2. Act of Third Party
3. All Equitable Defenses
4. Constitutionality of CERCLA
5. "Land Ban" Defense
6. Six–Month Statute of Limitations
7. Competitive Bidding Defense

To the extent that the United States seeks summary judgment on the remaining defenses, its motion is DENIED.

The determination of the United States' motion leaves the following issues to be determined at trial:

1. All Costs Attributable to the Cleanup of the Amtreco Site
2. Whether the Amtreco Response Action Was a Removal or Remediation
3. Those Costs Not Inconsistent With the National Contingency Plan

In determining which costs are not inconsistent with the national contingency plan, the following issues are among those that will be considered if defendants choose to raise them:

1. Cost Effectiveness (if required)
2. EPA Selection of the Response
3. Petroleum Exclusion

Accordingly, the United States' motion for summary judgment is GRANTED IN PART and DENIED IN PART, and defendants' motion for summary judgment is DENIED.

SO ORDERED.